A98A0497. BRADY v. THE STATE.
(503 SE2d 906)

SMITH, Judge.

James Lee Brady was convicted of the offenses of statutory rape, incest, and child molestation. His motion for new trial as amended was denied, and he appeals. Finding that the evidence was sufficient to convict Brady of the crimes charged but that the trial court erroneously denied Brady's motion for continuance, we reverse.

1. Brady first claims the evidence was insufficient to convict him

of the crimes charged. We disagree. Brady was the victim's stepfather. Evidence was presented that the victim reported to law enforcement officers and other witnesses that Brady and she had sex twice on the night of October 6, 1995. She told witnesses that she had been having sex with Brady since she was 11 years old. We also note that the victim's half-sister testified that when she was 11 or 12 years old, Brady began having sex with her, that she brought charges against him, and that she later dropped the charges because she was afraid for her sister and mother. The victim's mother also reported to a police officer that Brady had been having sex with the victim.

Although the victim, aged 15 at the time of trial, recanted her story at Brady's bond hearing and again at trial,[1] this recantation does not render the evidence against him insufficient. Her prior inconsistent statements concerning the sexual activity in which she and Brady were engaged were substantive evidence of Brady's guilt. See, e.g., *Gibbons v. State*, 248 Ga. 858, 863-864 (286 SE2d 717) (1982); *Brown v. State*, 175 Ga. App. 246, 247 (1) (333 SE2d 124) (1985). Although these statements contradicted the victim's trial testimony, it was for the jury, rather than this Court, to resolve conflicts and to assess witness credibility. See *Berry v. State*, 268 Ga. 437, 438 (1) (490 SE2d 389) (1997). The victim's prior statements, along with other evidence including her mother's testimony and testimony concerning Brady's involvement with the victim's half-sister, authorized a rational trier of fact to find Brady guilty under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Brown*, supra; *McCormick v. State*, 228 Ga. App. 467, 468 (1) (491 SE2d 903) (1997).

As for Brady's enumeration that the verdict is against the weight of evidence, we note that our review of the evidence is limited to its sufficiency, not its weight. See, e.g., *Mullinax v. State*, 227 Ga. App. 670, 672 (490 SE2d 201) (1997).

2. Brady claims that the trial court erroneously denied his request for a continuance based on the State's failure to provide him with a copy of a written scientific report within ten days of trial as provided for by OCGA § 17-16-4 (a) (4).

The report at issue contains the results of DNA testing performed by analysts at the Georgia Crime Lab. The five-page written report states that DNA obtained from Brady was consistent with that obtained from a vaginal swab of the victim and that the frequency of such a match would be one in two hundred thousand in the

---

[1] The victim stated that she made the story up because she was angry with Brady after an argument with him concerning her school attendance. The prosecutor who initially prosecuted the case but who later moved out of area testified during the trial that the victim recanted because her mother was upset.

Caucasian population and one in two hundred million in the African-American population. A crime lab analyst testified at trial to these facts. The report also describes in technical detail the evidence received from law enforcement officials and the scientific procedures performed on the evidence. The report was dated September 3, 1995, but was faxed to the prosecuting attorney two days later, on September 5. After receiving the report, defense counsel moved for a continuance.

During the hearing on Brady's motion, the prosecutor stated that he had called the crime lab four or five times a day, "rushing" and "hurrying" the lab with regard to the report. He also testified that as soon as he received the report from the crime lab, he filed it with the clerk of court and then placed a copy of it under defense counsel's door. Defense counsel apparently did not discover the report until the next day, four days before Brady's trial began. By letter dated August 30, the prosecutor provided defense counsel with the substance of the results contained in the written report. This letter, which "repeat[ed] a phone conversation" between the prosecutor and defense counsel's secretary, stated that the prosecutor had received an oral report that a DNA match existed and that the chance of a coincidental match was one in two hundred thousand in the white population.[2] The prosecutor also stated in the letter that as soon as he received a written report he would supply it to defense counsel.

In analyzing Brady's contention that a continuance was warranted, we must compare the language of the new statute addressing discovery of written scientific reports, OCGA § 17-16-4 (a) (4), with that of the prior statute addressing such discovery, OCGA § 17-7-211. The prior statute required scientific reports to be made available only when they were " 'in the possession of or available to the prosecuting attorney.' " *Law v. State*, 251 Ga. 525, 527 (1) (307 SE2d 904) (1983). OCGA § 17-16-4 (a) (4), however, places a heavier burden on the State by omitting language requiring reports to be in the possession of or available to the prosecuting attorney. Under that statute, if the State wishes to use scientific reports at trial, it must provide copies of the reports to the defense "no later than ten days prior to trial, or as otherwise ordered by the court."[3]

Here, defense counsel did not receive a copy of the written report within the ten-day period as required by the new statute. It is true that a continuance is not the only remedy when violation of discovery requirements has occurred. Under OCGA § 17-16-6, the court "may

---

[2] Defense counsel disputed receiving this letter.
[3] As *Law*, supra; *Davis v. State*, 204 Ga. App. 657 (420 SE2d 349) (1992); and *Daniel v. State*, 180 Ga. App. 179 (348 SE2d 720) (1986), relied on by the State, addressed the applicability of OCGA § 17-7-211, they are not controlling.

order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith," exclude the evidence. See generally *McWhorter v. State*, 229 Ga. App. 875, 876 (2) (495 SE2d 139) (1997). But under the circumstances present in this case, we cannot say that permitting defense counsel to inspect the scientific report four days prior to trial afforded adequate time for trial preparation. The facts of this case are similar to those in *Moody v. State*, 210 Ga. App. 431, 432 (436 SE2d 545) (1993), which was also a child molestation case. The prosecutor in *Moody* failed to provide to defendant within the appropriate time period a copy of a written report concerning a DNA match between a blood sample taken from defendant and semen found at the crime scene. The State's explanation for providing a copy of the report to defendant seven days before trial began was that it did not actually receive the report from the FBI until that time. Stating that the report was available to the State prior to the time it provided a copy to defendant and that defendant was unable to prepare adequately for trial because of the complexity of DNA analysis and testing, we concluded that the trial court abused its discretion in denying defendant's motion for new trial. Id. at 432.

*Moody* is distinguished from this case in some respects. In addition to its having been decided under the old statute, the scientific report in that case was apparently in existence and available well before the FBI provided it to the State. But that portion of our rationale in *Moody* addressing the technical nature of the DNA report and the fact that defense counsel was unable to prepare adequately for trial is equally applicable here. The report at issue in this case was highly detailed, containing technical, scientific descriptions of the procedures performed on blood samples taken from Brady and from a vaginal swab obtained from the victim. While defense counsel may have been knowledgeable in general about DNA testing, as evidenced by his opening statement and closing arguments, as well as his cross-examination of the State's witnesses, he did not receive the report containing the *specific* details about his client and the victim until four days before trial. Just as the trial court in *Moody* abused its discretion under the less stringent standard for providing copies of reports set out in OCGA § 17-7-211, we must conclude that the trial court here also abused its discretion in failing to grant Brady's motion for continuance based on the more restrictive language of OCGA § 17-16-4 (a) (4).

It is apparent that the prosecutor acted in good faith in an effort to obtain the results from the crime lab and in orally notifying defense counsel that DNA analysts had discovered a match between DNA found in Brady's blood sample and the vaginal swab obtained from the victim. But the report contained far more than those

results; as discussed above, it detailed in technical terms the methods of testing as well as the evidence tested. Brady was not provided with *this* information within a time frame that permitted him adequate opportunity to prepare his defense with regard to the specific procedures and findings detailed in the report. Under these circumstances, as in *Moody*, a continuance was the appropriate remedy.

Although the properly introduced evidence was sufficient to convict Brady of the crimes charged, as in *Moody*, we cannot say that the trial court's erroneous refusal to grant a continuance was harmless. Brady's conviction must therefore be reversed and a new trial granted.

3. Our holding in Division 2 renders Brady's final enumeration concerning sentencing moot.

*Judgment reversed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 7, 1998 — 

*Ashley C. Coope-McKenna*, for appellant.

*J. Gray Conger, District Attorney, Patrick B. Moore, Assistant District Attorney*, for appellee.

